UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

ARRENDADORA DE EQUIPO Y
MAQUINARIA ESPECIALIZADA S.A. DE
C.V.,

    Plaintiff,

    v.

CAROLINE DIBATO MEUKOUA and
LRCR CONSTRUCTION, LLC,

    Defendants,

    and

CITIBANK N.A.,

    Nominal Defendant.

Civil Action No. 24-1203-TDC

## MEMORANDUM OPINION

Plaintiff Arrendadora de Equipo y Maquinaria Especializada S.A. de C.V. ("AEME"), a Mexican corporation, has filed this civil action against Defendants Caroline Dibato Meukoua and LRCR Construction, LLC ("LRCR") and Nominal Defendant Citibank N.A. ("Citibank"). AEME alleges claims of conversion, fraud, and money had and received against Meukoua and LRCR ("Defendants") based on an incident in which AEME was induced to wire more than $1.8 million to a Citibank account opened in the name of LRCR. AEME has filed a Motion for Partial Summary Judgment on its claims for conversion and money had and received. The Motion is fully briefed, and the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED.

## BACKGROUND

The following relevant facts are drawn from the Joint Statement of Undisputed Facts and the Joint Record ("J.R."), which includes declarations from employees of AEME and Citibank; AEME email correspondence; bank statements and other documents relating to LRCR's bank accounts at Citibank and JPMorgan Chase Bank, N.A. ("Chase"); an audio recording of a telephone call between Meukoua and representatives of Citibank and Chase; the transcript of the deposition of Meukoua; and LRCR's Articles of Organization.

### I.    LRCR Bank Accounts

On November 27, 2023, Meukoua formed LRCR as a Maryland limited liability company ("LLC") and was at all relevant times the 100 percent owner of LRCR.  She used her personal address in Olney, Maryland as the address for LRCR and identified herself as LRCR's registered agent.  On December 7, 2023, Meukoua opened Citibank Account No. 9111402898 ("the Citibank Account") in the name of LRCR.  In the account application, Meukoua identified herself as the manager and 100 percent owner of LRCR and was the sole signatory for the account.  Meukoua also opened other bank accounts for LRCR, including Chase Account No. 571096216 ("the Chase Account"), which was opened sometime before January 3, 2024.

### II.   Transfer of Funds

AEME, a Mexican energy company, purchases specialized machinery from Combustion Associates, Inc. ("CAI"), a California-based corporation that provides modular gas turbine power generation systems.  In December 2023, AEME and CAI were engaged in a significant transaction, and consistent with their prior transactions, AEME expected CAI to email to AEME an invoice and wiring instructions for making the payment.  In a series of emails beginning on December 11, 2023, an individual using the email address ar@arcal3.com purported to be a CAI official,

requested that AEME send its payment to a different account from the one previously used, and on December 20, 2023 sent to AEME fraudulent wiring instructions directing that the payment be made to the Citibank Account. AEME was unaware that these emails were not sent by a CAI official.

Pursuant to the instructions, AEME wired $1,888,743.50 to the Citibank Account on December 22, 2023. After the wire transfer, an AEME official spoke to a CAI official and discovered that CAI did not control the Citibank Account and did not receive the funds. AEME and its bank sought to cancel the transaction but could not do so.

On January 3 and 4, 2024, Meukoua removed a total of $850,190.55 from the Citibank Account by withdrawing $190.55 through a debit transaction and by signing a check for $850,000.00 that was then deposited into the Chase Account. In relation to these transactions, Meukoua made 26 calls to Citibank's customer service line and, in one call on which a Chase representative was also on the phone to verify that the Citibank Account had sufficient funds to cover the check, identified herself to the Citibank customer service representative as the sole owner of and signatory of the Citibank Account and stated that she sought to transfer the money from the Citibank Account.

Once the fraud was discovered, Citibank froze the $1,038,537.95 that remained in the Citibank Account and returned those funds to AEME. However, the $850,190.55 that was withdrawn from the Citibank Account was not returned to AEME.

On January 16 and 24, 2024, after Meukoua deposited the check for $850,000.00 into the Chase Account, she withdrew a total of $9,200 in cash from that account to purchase iTunes gift cards. Meukoua also provided a Chase representative with the necessary information to conduct four wire transfers to banks in China. In these four wire transfers, on January 18, 19, 22, and 25,

2024, a total of $840,050.00 was wired from the Chase Account to those banks.  By the end of January 2024, only $450 remained in the Chase Account.  Meukoua closed the Chase Account sometime before June 5, 2024, at which point it held about $1,000.

In her deposition, Meukoua admitted that she created LRCR and used her two personal addresses as the company's addresses, opened the Citibank and Chase Accounts in LRCR's name, wrote and signed the check to move $850,000 from the Citibank Account into the Chase Account, and spoke with representatives from Citibank and Chase to confirm this transfer of funds.  She also provided the wiring information to Chase that was needed to effectuate the four wire transfers of funds from the Chase Account to the banks in China.

Meukoua asserted that the reason she took these actions is that Luke Reiss, a man she met on a dating app, asked her to establish LRCR as a company and gave her instructions for transferring funds from the Citibank Account to the Chase Account and then from the Chase Account to the banks in China.  Meukoua testified that Reiss told her that she was acting as his secretary and that he would train her to manage his company.  She acknowledged, however, that Reiss never paid her.  Although Meukoua was listed as the only signatory on the Citibank Account, she claimed that Reiss also had access to LRCR's accounts.

Specifically, Meukoua testified that prior to AEME's wiring of over $1.8 million into the Citibank Account on December 22, 2023, Reiss informed Meukoua that there would be such a transfer, and he told her to write and sign a check to transfer $850,000 from the Citibank Account to the Chase Account, which she did on January 4, 2024.  According to Meukoua, Reiss also directed her to withdraw money from the Chase Account and then purchase iTunes gift cards.  Meukoua testified that Reiss told her that some of the transfers of money were to pay for supplies for his company and provided her with invoices for such transactions.  She acknowledged,

however, that LRCR did not own any equipment or products and did not take any action or provide any services other than conducting wire transfers.

## III.    Procedural History

On April 24, 2024, AEME filed the original Complaint in this case against Citibank. On May 24, 2024, in response to a subpoena to Citibank, AEME received certain documents that revealed, among other details, that LRCR was the owner of the Citibank Account, that Meukoua owned LRCR, and that she was the signatory for that account. In July 2024, AEME requested pre-judgment writs of attachment and garnishment, as well as a temporary restraining order and a preliminary injunction, to prevent Defendants from transferring or disposing of the funds in the Citibank and Chase Accounts.

In the operative Amended Complaint, filed on July 9, 2024, AEME alleges three state common law claims against Meukoua and LRCR in the following numbered counts:    (1) conversion; (2) fraud; and (3) money had and received.

On July 15, 2024, after an *ex parte* hearing, the Court granted AEME's Motion for a Temporary Restraining Order but denied its requests for pre-judgment attachment and garnishment. On August 2, 2024, the Court granted AEME's request to convert the temporary restraining order into a preliminary injunction and again denied the requested pre-judgment writs. The case then proceeded to discovery.

## DISCUSSION

In its Motion, AEME seeks summary judgment on its claims for conversion and money had and received in Counts 1 and 3, respectively, and thereby seeks to hold Meukoua and LRCR jointly and severally liable for $850,190.55 in damages. In opposing the Motion, Defendants argue that Meukoua should not be held liable because Reiss was "the mastermind and sole perpetrator"

5

of the actions at issue in this case, and he coerced or forced Meukoua to participate unwillingly in the allegedly fraudulent scheme. Opp'n at 2, ECF No. 101-1.

## I. Legal Standard

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving parties, with all justifiable inferences drawn in their favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

## II. Conversion

AEME first seeks summary judgment on the claim for conversion asserted in Count 1. "Conversion is an intentional tort, consisting of two elements, a physical act combined with a certain state of mind." *Darcars Motors of Silver Spring, Inc. v. Borzym*, 841 A.2d 828, 835 (Md. 2004). The physical element is met by "any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." *Id.* (quoting *Allied Inv. Corp. v. Jasen*, 731 A.2d 957, 963 (Md. 1999)). The element of intent is met by evidence showing that "the defendant possessed an intent 'to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights.'" *Yuan v. Johns Hopkins*

6

*Univ.*, 157 A.3d 254, 270 (Md. 2017) (quoting *Darcars Motors*, 841 A.2d at 836). This element can be met even when the defendant "acted in good faith and lacked any consciousness of wrongdoing." *Darcars Motors*, 841 A.2d at 836.

Here, the physical act element, the exercise of dominion over the property of another, is readily established by undisputed facts in the record. Specifically, Meukoua has acknowledged that she moved funds belonging to AEME by writing and signing a Citibank Account check for $850,000 and depositing it into the Chase Account. She also acknowledged that she arranged to wire most of these funds out of the Chase Account to banks located in China, and that she withdrew some of the money from the Chase Account to purchase iTunes gift cards. Any of these acts satisfies the physical act element, because it demonstrates that Meukoua exercised "dominion" over the property "in defiance of the owner's rights." *Id.* at 835 (quoting *Merchants' Nat'l Bank of Balt. v. Williams*, 72 A. 1114, 1117 (Md. 1909)). The fact that Meukoua did not personally retain the funds does not matter, because the "gist of a conversion is not the acquisition of the property by the wrongdoer, but the wrongful deprivation of a person of property to the possession of which he is entitled." *Id.* at 836 (quoting *Wallace v. Lechman & Johnson, Inc.*, 732 A.2d 868, 874 (Md. 1999)).

As for the mental state element, Defendants argue that they cannot be held liable for conversion because Maryland law "requires a wrongful or unauthorized intent to deprive the rightful owner of the property," but they "acted in good faith and under the belief that [their] conduct was lawful and authorized," Meukoua "did not intentionally create LRCR for the purpose of receiving and taking [AEME]'s funds," and she instead "was coerced/forced by Luke Reiss to unwillingly and unknowingly participate in the alleged fraud." Opp'n at 5–6. To the extent that there may be a factual dispute over Meukoua's mental state, such as whether she actually acted

only at the behest of Reiss and whether she acted with the intent to defraud AEME, such issues of fact are not material to the question of whether Defendants acted with the requisite state of mind, because under Maryland law conversion requires only that the defendant had the intent to exercise control over the property, and a defendant may be found to have such intent even if the defendant "acted in good faith and lacked any consciousness of wrongdoing." *See Darcars Motors*, 841 A.2d at 836. In this instance, regardless of whether Meukoua was acting at the direction of Reiss and out of a good faith belief that her actions were appropriate and lawful, the record undisputedly establishes that her actions of transferring funds from the Citibank Account to the Chase Account, arranging for wire transfers out of the Chase Account to banks in China, and withdrawing funds from the Chase Account to purchase iTunes gift cards were undertaken with the intent to exercise control over the funds at issue at the time of those transactions. The record is devoid of facts demonstrating that she did not have that state of mind. The Court therefore finds that the two requirements for a conversion claim have been satisfied.

Defendants also argue that as intangible funds, the cash transferred into the Citibank Account cannot be the subject of a conversion claim. Under Maryland law, although "[t]he general rule is that monies are intangible and, therefore, not subject to a claim for conversion," an exception exists for "specific segregated or identifiable funds." *Allied Inv. Corp. v. Jasen*, 731 A.2d 957, 966 (Md. 1999). Thus, "conversion claims 'generally are recognized in connection with funds that have been or should have been segregated for a particular purpose or that have been wrongfully obtained or retained or diverted in an identifiable transaction.'" *Sage Title Grp., LLC v. Roman*, 166 A.3d 1026, 1035 (Md. 2017) (quoting *Jasen*, 731 A.2d at 966). This exception does not apply if the funds were "commingled" with other funds "such that they [were] no longer specifically identifiable." *Id.* at 1035–36. In opposing the Motion, Defendants assert that the funds

at issue in this case were "not specifically segregated or identifiable" because they were "deposited in a general bank account" and their current whereabouts are unknown. Opp'n at 5–6.

The record, however, shows that AEME's funds were transferred in a single, identifiable transaction for a particular purpose in that they were sent in one wire transfer from AEME to the Citibank Account in order to make a specific payment to CAI. Further, the bank statements show that the Citibank Account had no balance before the wire transfer from AEME on December 22, 2023, and that the Chase Account had no balance before the deposit of the check from the Citibank Account on January 3, 2024. Under these circumstances, and where Meukoua's withdrawal of $850,000 from the Citibank Account and her deposit of $850,000 into the Chase Account are undisputedly established in bank statements and her deposition testimony, the Court finds that the record conclusively demonstrates that there had been no commingling of AEME's funds with those of another, and that the funds transferred into the Chase Account were identifiable as AEME's funds. *See Sage Title Grp.*, 166 A.3d at 1037 (finding that funds withdrawn from an escrow account were sufficiently identifiable for purposes of a conversion claim because identical amounts were deposited and withdrawn, and records were kept of deposits and withdrawals). The funds are therefore subject to a conversion claim under Maryland law. That the funds were later transferred out of the Chase Account and dissipated beyond the control of Defendants does not preclude a conversion claim. *See Darcars Motors*, 841 A.2d at 835 (stating that the act of ownership or dominion "for conversion can occur . . . by initially acquiring the property").

Because there is no genuine issue of material fact on whether Defendants intentionally exercised control over AEME's funds in ways that were in fact inconsistent with AEME's right to the money, and because the funds were diverted in an identifiable transaction, AEME is entitled to summary judgment on the conversion claim. Although Meukoua argues that she cannot be held

personally liable because the relevant acts were committed on behalf of LRCR, Maryland law provides that members of LLCs may be held liable for torts they personally commit, even if they were committed in the name of the LLC. *See Allen v. Dackman*, 991 A.2d 1216, 1228–29 (Md. 2010). Where Meukoua was the sole member of LRCR and personally committed the acts of conversion in this case, she can be held personally liable, and the Motion will be granted as to both Defendants.

### III.    Money Had and Received

AEME also seeks summary judgment on its state common law claim in Count 3 for money had and received. "The action for money had and received is a common count used to bring a restitution claim under the common law writ of assumpsit." *Benson v. State*, 887 A.2d 525, 547 (Md. 2005). Such a claim "lies whenever the defendant has obtained possession of money which, in equity and good conscience, he ought not to be allowed to retain." *Id.* (quoting *State ex rel. Emp. Sec. Bd. v. Rucker*, 126 A.2d 846, 849 (Md. 1956)). Thus, a claim for money had and received can be established "where the defendant receives the money as a result of a mistake of law or fact and did not have a right to it." *Id.*

The record conclusively establishes that Defendants received the funds at issue when AEME wired them into the Citibank Account based on a mistaken belief that the account belonged to CAI, and that Defendants therefore did not have a right to those funds because they were intended for a different recipient. Indeed, Meukoua admitted during her deposition that "LRCR has no claim" to any of the funds "that AEME wired into the Citibank account." J.R. 146, ECF No. 105-7. Defendants contend that they acted in good faith and "did not receive the funds at issue under improper or inequitable circumstances," Opp'n at 7, but the resulting dispute over Meukoua's mental state is not material, because, as with the conversion claim, a claim for money

had and received does not depend on any wrongful intent on the defendant's part, but rather on the unjust possession of property to which the defendant has no right. *See Benson*, 887 A.2d at 547.

Defendants also assert that they cannot be liable for money had and received because they "did not retain the funds" and "do not have knowledge of the current whereabouts of the funds at issue," so they were "not unjustly enriched." Opp'n at 7. There is no dispute, however, that Defendants in fact received the funds when they were transferred to the Citibank Account and that they maintained the funds when they were transferred to the Chase Account, which was also under their control. Although Defendants apparently wired most of the funds to banks in China and withdrew a smaller amount to purchase gift cards, Defendants have provided no authority in support of the argument that they were not unjustly enriched and are not liable for money had and received because they disposed of the funds.

Notably, in relation to a similar claim for restitution, when a "payment was made as a result of a mistake of fact," as occurred here, the defendant may defeat the claim if "the recipient has changed its position to such an extent that repayment would be inequitable." *Admiral Ins. Co. v. Am. Nat'l Sav. Bank, F.S.B.*, 918 F. Supp. 150, 156 (D. Md. 1996). However, such an affirmative defense "is available only if the conduct of the recipient was not tortious and if the recipient was no more at fault for its receipt of the payment than was the payor." *Id.* Where the Court has concluded that Defendants are liable for conversion, any such defense is unavailable to them.

Accordingly, where the record establishes that AEME was misled into mistakenly transferring over $1.8 million to the Citibank Account which was under Defendants' control, that Defendants had no right to retain or use those funds, and AEME has recovered only a portion of the money it transferred to Defendants, the Court finds that AEME is entitled to summary judgment on its claim for money had and received. The Motion will be granted as to Count 3.

## IV.   Alter Ego

The record establishes that both Defendants were connected to the transfer of AEME's funds in that the two bank accounts were held in the name of LRCR, and Meukoua personally acted to effectuate the transfer of funds from the Citibank Account to the Chase Account.  Where Meukoua was the sole owner of LRCR, such that her actions could arguably be construed as taken on behalf of LRCR, AEME asks the Court to disregard LRCR's corporate form and to hold Meukoua personally liable and jointly and severally liable with LRCR for damages.  Where, as discussed above, Meukoua is already subject to personal liability for the tort of conversion, *see supra* part II, this issue primarily relates to the claim for money had and received.

Under Maryland law, "a corporate entity may be disregarded when necessary to prevent fraud or to enforce a paramount equity." *Schlossberg v. Bell Builders Remodeling, Inc.*, 109 A.3d 1146, 1146 (Md. 2015); *see Serio v. Baystate Props., LLC*, 60 A.3d 475, 483–84 (Md. Ct. Spec. App. 2013) (stating that this rule applies to LLCs).  The piercing of the corporate veil based on the need to enforce a paramount equity is warranted, among other circumstances, when the corporation is a mere "alter ego" for an individual. *Hildreth v. Tidewater Equip. Co., Inc.*, 838 A.2d 1204, 1209–10 (Md. 2003).   Maryland courts apply the alter ego doctrine only in "exceptional circumstances" when the plaintiff shows:

> (1) complete domination, not only of the finances, but of policy and business practice in respect to the transaction so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own, (2) that such control [was] used by the defendant to commit fraud or wrong, to perpetrate the violation of the statutory or other positive legal duty, or dishonest and unjust act in contravention of the plaintiff's legal rights, and (3) that such control and breach of duty proximately caused the injury or unjust loss.

12

*Id.* (citing 1 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 41.10 (1999 rev. vol.)). In assessing whether the first of these requirements are met, Maryland courts consider the following factors:

> (1) whether the corporation is inadequately capitalized, fails to observe corporate formalities, fails to issue stock or pay dividends, or operates without a profit, (2) whether there is commingling of corporate and personal assets, (3) whether there are non-functioning officers or directors, (4) whether the corporation is insolvent at the time of the transaction, and (5) the absence of corporate records.

*Id.*; *see Schlossberg*, 109 A.3d at 1146.

Here, as to the first overarching factor, the evidence conclusively demonstrates that LRCR was the alter ego of Meukoua in that there is no basis to conclude that LRCR had any separate existence apart from Meukoua. LRCR's Articles of Organization show that it was established approximately one month before the conversion of AEME's assets, Meukoua was the 100 percent owner of the company, the company was based at her personal address, and the company was insolvent in that it had no known assets until the undisputedly improper diversion of AEME's funds into the Citibank Account. There were no other officers or directors, functioning or nonfunctioning, no company records or other evidence that LRCR observed the formalities required of an LLC, and no other documentation that LRCR engaged in any company business. Indeed, Meukoua acknowledged at her deposition that LRCR, which was ostensibly a construction company, did not own any equipment, did not sell any goods, did not provide any services, and did not build anything.

As for the second and third factors, the evidence conclusively establishes that LRCR was used to open bank accounts that facilitated the perpetration of a fraud against AEME, in contravention of its rights, and that such use of LRCR caused injury and unjust loss to AEME. Although AEME has not sought summary judgment on the fraud claim, and as a result the Court

has made no findings on whether Meukoua herself was legally responsible for the fraud on AEME, the record also shows that, at a minimum, Meukoua used LRCR to engage in the undisputedly wrongful act of conversion against AEME by taking control of and transferring away the AEME funds. Notably, the Citibank Account and Chase Account were both empty prior to the wire transfers, the Chase Account was closed after they were completed, and, as the parties agree, Meukoua withdrew some of the funds for her personal use, specifically to purchase groceries, and withdrew other funds to purchase gift cards, ostensibly for the benefit of Reiss. The Court therefore finds that LRCR was the alter ego of Meukoua, and that paramount equity warrants the piercing of the corporate veil.

Under similar circumstances, in which defendants created new corporations in order to commit fraud or another wrong, Maryland courts have pierced the corporate veil to hold those defendants personally liable. *See, e.g.*, *Cahall v. Tyler Donegan Duncan Real Est. Servs., Inc.*, No. 195 Sept. Term 2020, 2022 WL 4286235, at *4, *10 (Md. Ct. Spec. App. Sept. 16, 2022) (affirming the trial court's decision to pierce the corporate veil and hold the corporation's president and sole shareholder liable, where the shareholder formed a new corporation using her personal address at the direction of her co-defendant, moved money between the corporation's accounts, and was held liable for conspiracy to convert checks despite maintaining that she did not understand the corporation's activities); *Colandrea v. Colandrea*, 401 A.2d 480, 482–83, 487 (Md. Ct. Spec. App. 1979) (piercing the corporate veil where the defendant, the sole shareholder of a corporation, falsely promised to pay the only former shareholder for his shares in the corporation and then fraudulently transferred substantially all of the corporation's business to a newly formed corporation to avoid its debts to the former shareholder).

Here, the Court finds, based on the above analysis of the factors set forth in *Hildreth*, that there is no genuine issue of material fact on whether LRCR was used to perpetrate a fraud on AEME, that LRCR was the alter ego of Meukoua, and that this case presents the "exceptional circumstances" in which piercing the corporate veil is necessary to "enforce a paramount equity." *Hildreth*, 838 A.2d at 1209–10. The Court will therefore grant summary judgment against both LRCR and Meukoua and subject them to joint and several liability for damages awarded.

## V.   Damages

AEME seeks $850,190.55 in damages, as well as pre-judgment and post-judgment interest and costs. The record shows that, of the $1,888,743.50 that AEME wired to the Citibank Account, $1,038,537.95 was frozen by Citibank and returned to AEME. The remainder, $850,190.55, was withdrawn from the Citibank Account and was not returned to AEME. AEME will therefore be awarded that amount.

The Court will also award pre-judgment and post-judgment interest. In cases arising under diversity jurisdiction, state law governs pre-judgment interest and federal law governs post-judgment interest. *See Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 633 (4th Cir. 1999). Under Maryland law, pre-judgment interest is available as "a matter of right . . . in conversion cases where the value of the chattel converted is readily ascertainable," as it is here. *Buxton v. Buxton*, 770 A.2d 152, 165 (Md. 2001). Therefore, the Court will award pre-judgment interest at a rate of six percent per annum from the date of AEME's transfer of funds to the Citibank Account until the date of the entry of judgment. *See* Md. Const. art. III, § 57; *Harford Cnty. v. Saks Fifth Ave. Distribution Co.*, 923 A.2d 1, 14–15 (Md. 2007). As for post-judgment interest, by statute it accrues at the rate set forth in 28 U.S.C. § 1961.

## CONCLUSION

For the foregoing reasons, the Motion for Partial Summary Judgment will be GRANTED.

A separate Order shall issue.

Date:  May 21, 2026



THEODORE D. CHUANG
United States District Judge